PER CURIAM.
LThe state charged defendant/respondent by bill of information with one count of simple burglary of a religious building, La.R.S. 14:62.6, and one count of simple burglary in violation of La.R.S. 14:62. The two crimes were apparently unrelated and the state ultimately severed the second count before bringing respondent to trial on March 16, 2010. A jury of 12 persons convicted respondent as charged of simple burglary of a religious building by a non-unanimous, 10-2 vote. The trial court sentenced respondent to 12 years imprisonment at hard labor without benefit of pro *53 bation, parole, or suspension of sentence. On appeal, the First Circuit conducted an error patent review of the record and noted respondent’s conviction stemmed from a proceeding in which a six-person jury offense had been mistakenly tried in a 12-person jury forum. Accordingly, the court of appeal pretermitted consideration of respondent’s two assignments of error, reversed his conviction and sentence, and remanded the case to the district court for further proceedings. State v. Brown, 10-2107 (La.App. 1 Cir. 5/6/11), 66 So.3d 81 (unpub’d) (Kuhn, J., dissenting). We granted the state’s writ application to consider the decision below. State v. Brown, 11-1044 (La.11/14/11), 75 So.3d 439. We now reverse the court of appeal’s judgment, after finding that respondent acquiesced in 1 ¡¡the error by actively participating in the selection of a 12-person jury without objection at any stage of the proceedings and thereby waived any relief on appeal on grounds that the panel selected was composed of a greater number of jurors than required by law.
There is no doubt that an error with respect to the size of the selected jury occurred in the present case. Because it is punished by a maximum sentence of 12 years imprisonment with or without hard labor, at least two years of which are without benefit of probation, parole, or suspension of sentence, simple burglary of a religious building is a relative felony ordinarily tried before a jury of six persons, all of whom must concur to render a verdict. La. Const, art. I, § 17 (“A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, all of whom must concur to render a verdict.”); see also La.C.Cr.P. art. 782 (same). Longstanding jurisprudence of this Court had considered errors involving trials conducted in the wrong jury forum, whether the selected panel included a greater or lesser number of jurors than required by law, non-waivable jurisdictional defects which rendered any verdict returned absolutely null. See, e.g., State v. Nedds, 364 So.2d 588, 589 (La.1978)(“We have consistently held that, in cases tried by a jury composed of either more than or less than the correct number of jurors, the verdict is null.”)(collecting cases). However, under present law, trial of a six-person jury offense in a 12-person jury forum may take place if the offense is joined in a single proceeding with a 12-person jury offense, ie., with an absolute felony necessarily punishable at hard labor. La. Const, art. I, § 17(B)(“Notwithstanding any provision of law to the contrary, offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor; provided ... that cases so joined shall be tried by a jury composed of twelve jurors, ten of whom must concur lato render a verdict.”); La.C.Cr.P. art. 493.2 (implementing Art. I, § 17(B)). Thus, trial of a relative felony before a jury of 12 persons is no longer an absolute constitutional outlier that it once was in Louisiana. We addressed the impact of the change in the law in State v. Jones, 05-0226, p. 3 (La.2/22/06), 922 So.2d 508, 511, and held that the error in trying a six-person jury offense in a 12-person jury forum no longer constitutes a non-waivable structural defect in the proceedings but “falls within the vast category of trial errors which are subject to harmless error analysis and which warrant reversal only where the defendant is actually prejudiced.” Jones specifically cautioned that: “Our holding here today does not guarantee the same result would be reached if a lesser number of jurors had been empaneled than required by law, or if there was *54 not unanimity of verdict.” Id., 05-0226 at 7, n. 9, 922 So.2d at 513.
In the present case, the court of appeal acknowledged the holding in Jones but also noted that in Jones, the verdict was unanimous and that this Court had therefore found the error harmless. Brown, 10-2107 at 4, 66 So.3d 81. On the other hand, respondent’s jury returned a non-unanimous verdict and a majority on the court of appeal panel therefore reasoned that the error in jury composition did not appear harmless and required reversal of defendant’s conviction and sentence. Brown, 10-2107 at 4, 66 So.3d 81 (“The absence in this case of a unanimous verdict was fatally prejudicial to the defendant’s jury trial right.”). Although he did not make the argument below, in this Court, respondent underscores the prejudicial nature of the error by pointing out that in the first panel of 14 prospective jurors called for voir dire examination, Laishima Taylor became the sixth juror selected after the state and defense exercised their peremptory and cause challenges. Polling of the jury at the end of the case indicated that Taylor was one of two jurors dissenting from the verdict of guilty as charged. Respondent argues that in a six-person jury trial, Taylor’s vote would have prevented a unanimous guilty verdict and thereby forced 14a mistrial of the case and forestalled his conviction on evidence that Judge Kuhn, dissenting from the majority decision, deemed so overwhelming that it rendered the error in jury composition harmless for that reason alone. Brown, 10-2107 at 1, 66 So.3d 81 (Kuhn, J., dissenting).
However, we need not address the question of whether the error in jury composition actually prejudiced respondent’s case. The record demonstrates that defense counsel did not object to the selection of a 12-person jury, but instead counsel actively participated in constituting the wrong jury forum. In post-verdict motions for a new trial, arrest of judgment, and judgment of acquittal, respondent attacked the sufficiency of the evidence supporting his conviction, but he did not raise the error with respect to jury composition, although La.C.Cr.P. art. 859(4) specifically provides, as one ground for arresting judgment, that “[t]he tribunal that tried the case did not conform with the requirements of Articles 779, 780 and 782 of this code.” Even in the court of appeal, respondent, who questioned the validity of a non-unanimous verdict on Sixth Amendment grounds, did not address the error in jury composition as a matter of Louisiana law. As in Jones, the court of appeal noted the error ex proprio motu in conducting an error patent review of the record.
However, because Jones made clear that the error of trying a six-person jury offense before a 12-person jury falls within the “vast numbers” of trial errors subject to harmless-error analysis, as opposed to errors interjecting a structural or jurisdictional defect in the proceedings, a necessary corollary of the decision is that the error also falls within the scope of Louisiana’s procedural default rules which generally require a defendant to timely preserve trial errors in the trial court for later appellate review. See, e.g., La.C.Cr.P. art. 841(A)(“An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.”). Grounds for arresting judgment as a matter of La.C.Cr.P. art. 859, | ^including jury composition errors under La.C.Cr.P. art. 782, may provide narrow exceptions to Louisiana’s general contemporaneous objection rule. See State v. Thomas, 427 So.2d 428, 433 (La.1982) (on reh’g)(al-though Louisiana does not have the equivalent of “plain error,” “[cjertain rights are so basic that the Code of Criminal Procedure provides that they may be raised for *55 the first time in arrest of judgment.”); State v. Gardner, 351 So.2d 105, 107 (La.1977)(“Defendant properly raised this error [in jury composition] in his motion in arrest of judgment ... no objection was necessary at the time of the jury selection, nor was a showing of prejudice required.”). However, in the present case, respondent neither objected at the time of jury selection, nor moved in the trial court in arrest of judgment, on grounds that the composition of his jury violated the terms of La. C.Cr.P. art. 782. In the latter case, and even assuming that a defendant may participate actively in constituting the wrong jury forum and then complain after verdict about the error in the district court, a motion in arrest of judgment on those grounds “must be filed and disposed of before sentence.” La.C.Cr.P. art. 861.
Under these circumstances, Jones has modified our former rule that “an error in the size of the jury is discoverable on the face of the record and therefore we may note it ex proprio motu without formal objection or an assignment of error” as a basis for reversing a defendant’s conviction and sentence. State v. Smith, 367 So.2d 857, 858 (La.1979). That rule was based on the now discarded supposition that errors in jury composition are invariably jurisdictional or structural in nature. In the present case, to the extent that respondent failed altogether to employ the procedural vehicles provided by law for preserving the error for review, he waived any entitlement to reversal on appeal on grounds that he was tried by a jury panel which did not conform to the requirements of La. Const. art. I, § 17 and La.C.Cr.P. art. 782 because it included a greater number of jurors than required by law, although the error is patent on the face of the record. See Jones, 05-0226 at 5, 922 |6So.2d at 516 (Weimer, J., concurring) (“[The state correctly argues that] Louisiana’s established procedural default rules should govern because the rule barring trial of a six-person jury offense in a twelve-person forum no longer applies in all instances and hence has lost its jurisdictional aspect.... A defendant should not have the opportunity of gambling on a favorable verdict from the larger jury and then resorting on appeal to an error that easily could have been corrected in the trial court at the outset of jury selection.”).[1]
Accordingly, the decision of the court of appeal is reversed and this case is remanded for consideration of the assignments of error pretermitted on original appeal.
REVERSED; CASE REMANDED

. As in Jones, we have no occasion to consider here whether trial before a panel composed of fewer jurors than required by law, i.e., trial of a 12-person jury offense in a six-person jury forum, constitutes more than trial error and retains its jurisdictional character as a structural defect in the proceedings. We also have no occasion to consider here whether, in a postconviction claim of ineffective assistance of counsel, the failure of counsel to object to the error in jury composition, which may constitute counsel error for purposes of the two-part test of ineffective assistance claims set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), may also satisfy Strickland’s second prong, that the error prejudiced respondent, i.e., "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.” Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. Cf. Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (the test of prejudice under Strickland “focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.”).