McDonald, j.
I ?The defendant, Randy Easter, was charged by amended bill of information with driving while intoxicated (DWI), fourth offense, in violation of La. R.S. 14:98.[1] The defendant entered a plea of not guilty. Subsequently, the trial court denied the defendant’s motion to quash. After a jury trial, the defendant was found guilty as charged. The trial court denied the defendant’s motion in arrest of judgment, motion for postverdict judgment of acquittal, and motion for new trial. The defendant was sentenced to fifteen years imprisonment at hard labor, with the first two years required to be served without the benefit of parole. The trial court further imposed the payment of a $5,000.00 fine and court costs within two years of release from imprisonment and ninety days imprisonment in the Lafourche Parish Detention Center in default of payment of the fine and court costs. The defendant *1054 now appeals, assigning error to the trial court’s denial of the motion to quash and the trial by a six-person jury. For the following reasons, we affirm the conviction and the sentence.

STATEMENT OF FACTS

On July 29, 2011, about 5:00 a.m., Brody Thibodaux, a former deputy with the La-fourche Parish Sheriffs Office, came into contact with the defendant while patrolling in the south area of the parish. As Thibo-daux travelled southbound on Highway 3235, he observed a green Chevrolet pickup truck travelling on the shoulder of the highway. The vehicle travelled for approximately one hundred yards before it swerved into the right lane of travel without the use of a signal. At that point, Thibodaux conducted a traffic stop, and the driver was identified as the defendant. As Thibodaux requested the defendant’s driver’s license and proof of |ainsurance, he noticed that the defendant had slurred speech and the distinct odor of an alcoholic beverage. The defendant swayed when he stepped out of the vehicle and stood unsteadily. (R. 759) Thibodaux further observed that the defendant had a resting nystagmus (described as an eye-twitch). Thibodaux asked the defendant to submit to a standardized field sobriety test, but he refused. Thibodaux advised the defendant of his Miranda[2] rights, placed him under arrest, and transported him to the Galliano substation where he was advised of his rights regarding a chemical test and questioned. The defendant refused to sign a waiver of rights form. During the interview, the defendant confirmed that he had been driving and specifically indicated that he was going to the hospital, but refused to respond when asked if had been drinking alcohol. The defendant also refused to submit to a breathalyzer test. At 6:26 a.m., Thibodaux obtained a search warrant for a blood test. The defendant’s blood was drawn at Lady of the Sea General Hospital at 7:05 a.m., collected and stored as evidence, and subsequently sent to the Louisiana State Police Crime Laboratory for testing. According to the Scientific Analysis Report, the defendant’s blood alcohol content was 0.19 grams percent. The defendant’s three prior DWI offenses also occurred in Lafourche Parish.

ASSIGNMENT OF ERROR NUMBER ONE

In the first assignment of error, the defendant argues that the trial court erred in denying his motion to quash. The defendant contends that the ten year cleansing period after his first and second-offense DWI pleas (which convictions took place on the same day) had expired before he pled to third-offense DWI. He further specifically notes that when he pled guilty to first and second-offense DWI on October 25, 2001, prior to the .2008 legislative amendment of La. R.S. 14:98, the calculation of the ten-year cleansing period did not exclude the time period |4awaiting trial. He argues that at the time of those two pleas, the trial court misinformed him in indicating that the cleansing period would begin on the date of the pleas and that any subsequent DWI arrest during that subsequent ten-year period would result in a charge of DWI third offense. Thus, the defendant concludes that his guilty pleas were not knowing or voluntary. The defendant further notes that he received a first offender pardon pursuant to La. R.S. 15:572, which only contains an exception for offenders of the Habitual Offender Law, riot DWI offenders. Thus, the defendant argues that his conviction of DWI third-offense should not have been used as a predicate conviction.
*1055 When a trial court denies a motion to quash, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court’s discretion. See State v. Odom, 2002-2698 (La.App. 1st Cir.6/27/03), 861 So.2d 187, 191, writ denied, 2003-2142 (La.10/17/03), 855 So.2d 765. However, a trial court’s legal findings are subject to a de novo standard of review. See State v. Smith, 1999-0606, (La.7/6/00), 766 So.2d 501, 504.
In order for a guilty plea to be used as a basis for actual imprisonment, enhancement of actual imprisonment, or conversion of a subsequent misdemeanor into a felony, the trial judge must inform the defendant that by pleading guilty, he waives: (a) his privilege against compulsory self-incrimination; (b) his right to trial and jury trial where applicable; and (c) his right to confront (cross-examine) his accusers. See Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). The judge must also ascertain that the accused understands what the plea connotes and its consequences. State v. Henry, 2000-2250 (La.App. 1st Cir.5/11/01), 788 So.2d 535, 541, writ denied, 2001-2299 (La.6/21/02), 818 So.2d 791. In Louisiana, this rule has been made applicable to misdemeanor guilty pleas. State v. Jones, 404 So.2d 1192, 1198 (La.1981) (per curiam). In State v. Carlos, 1998-1366 (La.7/7/99), 738 So.2d 556, the Louisiana Supreme |aCourt held that the burden-shifting principles of State v. Shelton, 621 So.2d 769 (La.1993), are applicable to multiple-offense DWI cases. Carlos, 738 So.2d at 558-59.
Under this burden-shifting scheme, if the defendant denies the allegations of a bill of information, the State has the initial burden to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when the pleas were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a “perfect” transcript of the taking of the guilty plea, one that reflects a colloquy between the judge and the defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a “perfect” transcript, for example, a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. See Shelton, 621 So.2d at 779-80. The purpose of the rule of Shelton is to demarcate sharply the differences between direct review of a conviction resulting from a guilty plea, in which the appellate court may not presume a valid waiver of rights from a silent record, and a collateral attack on a final conviction used in a subsequent recidivist proceeding, as to which a presumption of regularity attaches to promote the interests of finality. See State v. Deville, 2004-1401 (La.7/2/04), 879 So.2d 689, 691 (per curiam). Boykin requires only that a defendant be informed of the three rights enumerated | f,above. State v. Nuccio, 454 So.2d 93, 104 (La.1984).
As noted, the defendant’s predicate offenses were committed on December 2, 2007, May 29, 2000, and June 18, 1999, and the instant offense was committed on July *1056 29, 2011. Louisiana Revised Statute 14:98(F)(2) (prior to statutory amendment by 2014 La. Acts No. 385, § 1) provided that a prior conviction did not include a conviction for an offense if committed more than ten years prior to the commission of the crime for which the defendant was being tried. Accordingly, an initial ten-year cleansing period in this case, determined on a strictly calendar basis, would comprise the period of time beginning with the date of commission of the offense for which the defendant is being tried, July 29, 2011, and ending with the same month and day ten years earlier, July 29, 2001.
In determining the ten-year cleansing period, the periods of time during which the offender was awaiting trial, under an order of attachment for failure to appear, or on probation or parole for a DWI offense, or incarcerated in a penal institution in this or any other state are excluded in computing the ten-year period. See La. R.S. 14:98(F)(2) (prior to statutory amendment by 2014 La. Acts No. 385, § 1). As the defendant notes, the amendment of the statutory cleansing period then provided in La. R.S. 14:98(F)(2), by Act 640 of 2008, effectively enlarged the cleansing period.[3] However, the Louisiana Supreme Court has held that enlarging a statutory cleansing period does not require an individual to defend past acts for which he has already been convicted and punished, but to measure his future conduct in light of the legislature’s changing perception of significant social problems. State v. Rolen, 1995-0347 (La.9/15/95), 662 So.2d 446, 449. For purposes of analyzing the ex post facto implications of statutes increasing penalties for future crimes based on past crimes, “the relevant ‘offense’ is the current crime, |7not the predicate crime.” Rolen, 662 So.2d at 448. Accordingly, the trial court’s application of statutory cleansing period as amended in 2008 was appropriate although the defendant’s predicates were committed before the amendment. In this case the mere subtraction of the defendant’s probationary period of three years imposed when he pled guilty to third offense DWI on July 7, 2008 places the three predicate convictions well within the cleansing period without considering any other excludable time periods.
Regarding the voluntariness of the predicate guilty pleas, the trial court determined that the statutory “cleansing period” was not an inducement, consideration, or cause in the defendant’s decision to plead guilty. Noting that the defendant produced no affirmative evidence that he would not have pled guilty to the predicate offenses had he been otherwise informed, we find no abuse of discretion in the trial court’s determination that the pleas were voluntary and intelligent. See State v. Pelas, 1999-0150 (La.App. 1st Cir.11/5/99), 745 So.2d 1215, 1217-18 (trial judge’s notice to defendant of five-year cleansing period insufficient to create contract concerning cleansing period; moreover, any such contract would have been an absolute nullity). Further, contrary to the defendant’s assertions in his brief, the trial court was only required to inform the defendant of the three enumerated Boykin rights. The jurisprudence has been unwilling to extend the scope of Boykin to include advising a defendant of any other rights he may have, nor of the possible consequences of his actions. Henry, 788 So.2d at 541; State v. Smith, 1997-2849 (La.App. 1st Cir.11/6/98), 722 So.2d 1048, *1057 1049 (explanation of the right to judicial review of a conviction is not part of the three-right articulation rule of Boykin). As the defendant conceded, the evidence herein of the defendant’s predicate guilty pleas including minute entries and transcripts reflect the defendant was advised of, understood and waived the triad of Boykin rights. In connection with the challenged predicates, the State met its initial burden |sof proof under Shelton. Thereafter, the defendant failed to produce any affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the pleas.
As the defendant notes, herein the defendant received an automatic first offender pardon in connection with his third offense DWI conviction under La. R.S. 15:572. Louisiana Constitution article IV, § 5(E)(1) provides:
The governor may grant reprieves to persons convicted of offenses against the state and, upon favorable recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. However, a first offender convicted of a non-violent crime, or convicted of aggravated battery, second degree battery, aggravated assault, mingling harmful substances, aggravated criminal damage to property, purse snatching, extortion, or illegal use of weapons or dangerous instrumentalities never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor.
Louisiana Revised Statute 15:572 provides, in pertinent part, as follows:
A. The governor may grant reprieves to persons convicted of offenses against the state and, upon recommendation of the Board of Pardons as hereinafter provided for by this Part, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. Notwithstanding any provision of law to the contrary, the governor shall not grant any pardon to any person unless that person has paid all of the court costs which were imposed in connection with the conviction of the crime for which the pardon is to be issued.
B. (1) A first offender never previously convicted of a felony shall be pardoned. automatically upon completion of his sentence without a recommendation of the Board of Pardons and without action by the governor.
[[Image here]]
. D. On the day that an individual completes his sentence the Division of Probation and Parole of the Department of Corrections, after satisfying itself that (1) the individual is a first offender as defined herein and (2) the individual has completed his sentence shall issue a certificate recognizing and proclaiming that the petitioner is fully pardoned for the offense, and that he has all rights of citizenship and franchise, and shall transmit a copy of the certificate to the individual and to the clerk of court in and for the parish where the conviction occurred. This copy shall be filed in the record of the proceedings in which the conviction was obtained. However, once an automatic pardon is granted under the provisions of this Section, the | ¡¡individual who received such pardon shall not be entitled to receive another automatic pardon.
E. Notwithstanding any provision herein contained to the contrary, any person receiving a pardon under the provisions of Subparagraph (1) of Para *1058 graph (E) of Section 5 of Article IV of the Louisiana Constitution of 1974 and this Section may be charged and punished as a second or multiple offender as provided in R.S. 15:529.1.
While authority for both pardons is found in La. Const, art. IV, § 5(E)(1) and La. R.S. 15:572, the governor’s pardon is full and complete while the automatic first offender pardon is limited. The law of this State has never recognized the automatic first offender pardon as being a full pardon and restoring the pardoned individual to the status of innocence. To the contrary, the law has consistently distinguished between the full and complete scope of the governor’s pardon and the limited scope of the first offender pardon. State v. Lemoine, 2005-265 (La.App. 5th Cir.11/29/05), 919 So.2d 727, 729, writ denied, 2005-2564 (La.9/15/06), 936 So.2d 1254. Herein, the defendant received an automatic first offender pardon as opposed to a full and complete pardon from the governor. Based on the limited scope of the first offender pardon, the defendant’s pardoned third offense DWI conviction can serve as a predicate conviction for the fourth offense DWI charge against the defendant. Considering the foregoing conclusions, there was no abuse of discretion or error in the denial of the motion to quash. Assignment of error number one is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

In the second assignment of error, the defendant contends that this case was improperly tried by a jury composed of six jurors as opposed to twelve. The defendant notes that during the trial, the State presented evidence to show that he was previously required to complete substance abuse treatment and home incarceration on his third offense DWI conviction. Thus, the defendant argues that his punishment was necessarily confinement at hard labor pursuant to La. R.S. |ln14:98(E)(4)(a) (prior to amendment by 2014 La. Acts No. 385, § 1). The defendant notes that this error was raised below in his motion in arrest of judgment. The defendant asks that this Court reverse the guilty verdict and enter a judgment 'of nullity or acquittal or grant a new trial.
A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor shall be tried before a jury of six persons, all of whom must concur to render a verdict. La. Const, art. I, § 17(A); La.Code Crim. P. art. 782(A). As the defendant notes, the instant case was tried before a six-person jury.
As formerly provided under La. R.S. 14:98(E)(l)(a), the punishment for fourth-offense DWI is imprisonment with or without hard labor for not less than ten years and not more than thirty years and a $5,000.00 fine (now provided under newly added La. R.S. 14:98.4(A)(1)). In accordance with La. Const, art. I, § 17(A) and La.Code Crim. P. art. 782(A), such a case shall be tried before a jury of six persons, all of whom must concur. However, former La. R.S. 14:98(E)(4)(a) (now see La. R.S. 14:98.4(B)(1)) provided:
If the offender has previously been required to participate in substance abuse treatment and home incarceration pursuant to subsection D of this Section, the offender shall not be sentenced to substance abuse treatment and home incarceration for a fourth or subsequent offense, but shall be imprisoned at hard labor for not less than ten nor more than thirty years, and at least three years of the sentence shall be *1059 imposed without benefit of suspension of sentence, probation, or parole. (Emphasis added).
Herein, as previously stated, the defendant was sentenced to fifteen years imprisonment at hard labor, with the first two years required to be served without the benefit of parole and the payment of a $5,000.00 fine. The bill of information does not specify a subsection and the defendant was sentenced under former La. R.S. 14:98(E)(l)(a). Although, the State later presented evidence at trial in 11 connection with predicate # 8 which, if accepted, allowed for the application of former La. R.S. 14:98(E)(4)(a), neither the charging instrument, nor the sentence imposed by the trial court, was based upon the enhancement provision. Thus, as noted by the trial court in denying the defendant’s motion in arrest of judgment, the defendant was never subjected to the mandatory hard labor or three-year parole restriction of former subsection (E)(4)(a). The sentence imposed in this case was within the range for a fourth offense under former La. R.S. 14:98(E)(l)(a), without enhancement. Under former La. R.S. 14:98(E)(l)(a), the offense of which the defendant was charged, convicted, and sentenced was a relative felony and therefore properly tried by a jury of six members.[4] Based on all of the foregoing considerations, we find no merit in assignment of error number two.
CONVICTION AND SENTENCE AFFIRMED.

. Pursuant to 2014 La. Acts No. 385, § 1, the sentencing for a fourth or subsequent DWI offense (formerly provided in La. R.S. 14:98(E)), has been redirected to an added provision, La. R.S. 14:98.4. The defendant has three prior DWI convictions based on guilty pleas that took place on July 7, 2008 and October 25, 3001. The predicate offenses were committed on December 2, 2007, May 29, 2000, and June 18, 1999.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. Specifically, La. R.S. 14:98(F)(2) was amended by 2008 La. Acts No. 640, § 1, in pertinent part, to add the language, "awaiting trial, on probation for an offense described in Paragraph (1) of this Subsection, under an order of attachment for failure to appear.”

. As we find the jury composition proper in this case, we do not have the occasion to consider whether trial before a panel composed of fewer jurors than required by law retains its jurisdictional character as a structural defect. In State v. Brown, 2011-1044 (La.3/13/12), 85 So.3d 52 (per curiam), the Louisiana Supreme Court found an error with respect to jury size to be a waivable trial error, and not a structural defect, in which defense counsel actively participated in, and failed to object to, the selection of a twelve-person jury instead of a six-person jury. The Court found that it did not need to address whether the error in jury composition actually prejudiced the defendant's case because the defense counsel failed to object or to file a motion in arrest of judgment on this ground and because there is no longer a "supposition that errors in jury composition are invariably jurisdictional or structural in nature.” Brown, 85 So.3d at 54-55. As in the instant case, the Court did not consider whether trial before a panel composed of fewer jurors than required by law retains its jurisdictional character as a structural defect. Brown, 85 So.3d at 55, n. 1; Cf. also State v. Dahlem, 2013-0577 (La.App. 1st Cir.6/18/14), 148 So.3d 591, 597, writ granted, 2014-1555 (La.3/27/15), 161 So.3d 646. (wherein the issue was waived).